UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cr-00465-CDP |
| | ) | |
| SCOTT ROETHLE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S TRIAL BRIEF AND MOTIONS *IN LIMINE* FOR PRETRIAL DETERMINATIONS OF ADMISSIBILITY**

The United States of America, by and through Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Assistant United States Attorneys Derek Wiseman and Justin Ladendorf, respectfully submits its trial brief and the following motions *in limine*:

(1) **Motion *in Limine* to enforce the terms of Defendant Roethle's proffer agreement and to admit Defendant Roethle's interview statements**

(2) **Motion *in Limine* to admit business records as relevant, self-authenticating non-testimonial documents under Rules 902 and 803(6)**

(3) **Motion *in Limine* to admit summary exhibits under Rule 1006**

(4) **Motion *in Limine* to admit records relating to Defendant Roethle's email account**

(5) **Motion *in Limine* to preclude Defendant Roethle from blaming Medicare**

(6) **Motion *in Limine* to preclude Defendant Roethle from commenting on potential punishment, sentence, or the availability of civil remedies**

(7) **Motion *in Limine* to preclude Defendant Roethle from making any selective or vindictive prosecution arguments at trial**

(8) **Motion *in Limine* to exclude unfounded allegations of law enforcement misconduct**

(9) **Motion *in Limine* to limit cross-examination of government witnesses under Federal Rule of Evidence 609**

(10) **Motion *in Limine* to preclude impermissible argument as to missing witnesses**

(11) **Motion *in Limine* to preclude Defendant Roethle's introduction of self-serving hearsay**

(12) **Motion *in Limine* to preclude questions seeking to elicit an opinion about the**

legality or illegality of Defendant Roethle's actions

(13)    **Motion *in Limine* to preclude improper character evidence**

(14)    **Motion *in Limine* to admit summary witness testimony**

(15)    **Motion *in Limine* to allow the United States to show the jury transcripts of Defendant Roethle's recorded interview and telephone conversation**

(16)    **Motion *in Limine* to allow the United States to call witnesses on more than one occasion**

(17)    **Motion *in Limine* to exclude evidence not produced in response to request for reciprocal discovery**

(18)    **Motion *in Limine* to preclude an improper and untimely advice of counsel defense**

(19)    **Motion *in Limine* to preclude Defendant Roethle from presenting legally baseless theories**

(20)    **Motion *in Limine* to preclude Defendant Roethle from testifying without taking the witness stand**

(21)    **Motion *in Limine* to revoke Defendant Roethle's self representation if he deliberately engages in serious and obstructionist misconduct**

(22)    **Motion *in Limine* to admit expert testimony from HHS-OIG Special Agent Mitchell Blum**

## BACKGROUND

Defendant Scott Roethle has been charged with committing health care fraud. *See* Doc. 1 ("Indictment"). The evidence at trial will establish that Defendant Roethle committed health care fraud by ordering orthotic braces for thousands of Medicare patients—whom he had never met and knew nothing about—without any medical judgment or analysis. In those fraudulent orthotic brace orders, Defendant Roethle falsely represented that he had a doctor-patient relationship with the Medicare patients, and that he made a medical necessity determination—neither of which was true. Equipped with Defendant Roethle's fraudulent orthotic brace orders, companies (including companies here in the Eastern District of Missouri) submitted fraudulent reimbursement claims to Medicare for the orthotic braces that were ordered by Defendant Roethle but that the patients did not want or need. Based on those fraudulent reimbursement claims, Medicare paid out more than eight million dollars. In exchange for signing the fraudulent orthotic brace orders—and thereby enabling the submission of the fraudulent reimbursement claims to Medicare—Defendant Roethle

received hundreds of thousands of dollars in illegal kickback payments.

At trial, the United States will admit evidence of Defendant Roethle's statements to federal investigators—including his initial lies about his involvement in the charged health care fraud scheme and his subsequent admissions to committing health care fraud. In fact, as Defendant Roethle told federal investigators, he was hired by companies that sent him thousands of orthotic brace orders to sign for patients across the country whom he had never met and knew nothing about. During an interview with federal investigators, Defendant Roethle also admitted that he made no medical judgments when signing the orthotic brace orders—he simply opened the documents on his computer or phone and signed them (often dozens at a time) without hesitation. Defendant Roethle further admitted that he knew that signing the orders for expensive and unnecessary orthotic braces was wrong, but that he did it anyway because he wanted to purchase a new house. In addition, Defendant Roethle told federal investigators that he knew that it was a problem to sign these fraudulent orthotic brace orders without having a doctor-patient relationship with the Medicare patients.

Evidence at trial will further establish that Defendant Roethle signed these fraudulent orders from his new house, at his gym, and while on vacations. Indeed, the United States will admit Medicare claims data, the fraudulent orders retrieved from a Dropbox search warrant, DocuSign records, and internet protocol address records to corroborate Defendant Roethle's statements that he signed the fraudulent orthotic brace orders without analysis or review. The trial evidence will also include emails sent by Defendant Roethle during his fraud scheme where he acknowledged that the patients did not want or need the braces and where he admitted that his actions were fraudulent. In addition, the United States will also call fact witnesses who will testify that Defendant Roethle was well aware that the patients did not want or need the orthotic braces that

he persistently ordered.

The United States will also admit Medicare claims data establishing that Defendant Roethle had no prior relationship with the Medicare patients for whom he fraudulently ordered the orthotic braces. Additionally, the claims data will also establish that Defendant Roethle—who is an anesthesiologist in Kansas—ordered more orthotic braces than any other doctor in the State of Missouri during his health care fraud scheme.

## MOTIONS *IN LIMINE*

**I.    Motion *in Limine* to enforce the terms of Defendant Roethle's proffer agreement and to admit Defendant Roethle's interview statements**

The United States moves this Court for an order to enforce the express terms of the proffer agreement between the United States and Defendant Roethle. *See* Exhibit A (Scott Roethle Proffer Agreement). Defendant Roethle signed the attached proffer letter after fully consulting with his then-attorney. The proffer letter provides that "the United States agrees that no statements given in the interview will be used directly against your client in any criminal case during the United States of America's case in chief." However, the proffer letter also includes the following explicit caveat: "**Finally, and most importantly, if your client does not now tell the truth, the promise not to use what your client says in the interview against your client shall be null and void.**" *Id.* at 2. (emphasis added). Defendant Roethle confirmed to investigators that he completely understood the terms of the proffer letter prior to participating in the proffer interview. More specifically, counsel for the United States explicitly confirmed with Defendant Roethle that he fully understood the provision of the proffer letter that, if he failed to tell the truth, the information he provided in the proffer could be used by the United States against Defendant Roethle without limitation. Because Defendant Roethle told at least two provable and material falsehoods during his proffer interview, the protections afforded under the proffer agreement are void, and the United

States may admit Defendant Roethle's proffer statements at his trial.

During his proffer interview, Defendant Roethle told two provable lies:  First, Defendant Roethle said that he never had any inclination that the telemedicine companies were acting as telemarketing companies and cold calling patients, and second, he said that he believed patients had the option not to fill the thousands of prescriptions he was writing for unwanted braces. Defendant Roethle's own emails demonstrate the falsity of both of these statements.

Regarding Defendant Roethle's false proffer statement that he never had any inclination that the telemedicine companies were acting as telemarketing companies and cold calling patients, in an email that Defendant Roethle sent to a telemedicine company employee on January 19, 2018, Defendant Roethle admitted, "I have a feeling that the marketing groups might be cold calling people at their home who have no idea what they are getting." *See* Exhibit B. In a subsequent email to another telemedicine company employee on March 8, 2018, Defendant Roethle stated, "I have heard from a couple of patients that they just receive marketing calls asking about their pain, and then eventually the prescriptions show up in the mail and their insurance is billed. This seems predatory and/or fraudulent." *See* Exhibit C. Defendant Roethle's emails make clear that, contrary to his statement in his proffer, he was well aware that the companies acting as telemarketing companies and cold calling patients.

Defendant Roethle's emails also demonstrate the falsity of his proffer statement that he believed that patients had the option not to fill the prescriptions for unwanted braces and medications. As Defendant Roethle indicated in his emails, he knew that the patients who received the unwanted items were completely unaware that a prescription had been written, and thus, could not possibly have opted out of filling the prescription. For example, in an email that Defendant Roethle sent to a telemedicine company employee on January 9, 2018, Defendant Roethle said, "I

was notified of a patient, Joann Scherer, that has received multiple boxes of multiple braces, and never has ordered/requested them." *See* Exhibit D. In addition, in an email that Defendant Roethle sent to a telemedicine company employee on July 26, 2018, Defendant Roethle said, "the patient, insurance company, and/or pharmacy calls me stating the patient never spoke to anyone or requested brace[.]" *See* Exhibit E. Defendant Roethle's proffer statement that patients could opt out of the prescriptions is patently belied by his emailing acknowledging that patients were receiving braces without ever having spoken to anyone or having requested the braces that arrived, unsolicited, at the patients' homes. Thus, because Defendant Roethle made material, false statements about his criminal activity during his proffer interview, the United States may admit his interview statements under the express terms of the proffer agreement.[1]

According to the Eighth Circuit, a defendant's proffer statements are admissible at trial under the terms of the proffer agreement. In *United States v. Adejumo*, the Eighth Circuit found no error in the district court's admission of the defendant's proffer statements at trial, affirming the district court's conclusion that the defendant had "breached the express terms of the agreement by providing material false information during the proffer session," thus enabling the United States to admit his statements at trial. 772 F.3d 513, 525–26 (8th Cir. 2014). *See also United States v. Sanders*, 341 F.3d 809, 817 (8th Cir. 2003); *United States v. Williams*, 295 F.3d 817, 820 (8th Cir. 2002) ("[T]here was no plain error in the government's cross-examination of Williams concerning his proffer statement and plea stipulation. The proffer statement expressly provided that, in the

---

[1] According to the express terms of the attached proffer agreement, Defendant Roethle's proffer statements will also be admissible—under a separate proffer provision—if he makes any statements or takes any positions at trial that are inconsistent with his proffer statements. *See* Exhibit A, p. 2 ("If, at any future trial or other proceeding in which your client is a defendant or a witness, your client were to testify contrary to the substance of this interview, or through any manner whatsoever, either personally or through an attorney or other representative, including, but not limited to, opening statements, cross-examination of witnesses, direct examination of witnesses, or the presentation of exhibits or other evidence, present a position inconsistent with the information provided in the interview, the United States may use either as evidence in chief, or rebuttal evidence, any statements made or other information provided by you.").

event that Williams testified at a trial and offered testimony different from his proffer statement, 'the Government may cross-examine him concerning any statements made or other information provided during the [proffer] interview.'"). Likewise, this Court has recognized "**that the [Proffer] Agreement should be enforced as written[.]**" *See United States v. Redzic*, No. 1:07CR00110 ERW, 2008 WL 11452358, at *3 (E.D. Mo. Mar. 21, 2008) (emphasis added).

In addition to the two falsehoods laid out above, the proffer statements of Defendant Roethle that the United States will seek to admit, in accordance with the proffer agreement, include but are not limited to the following:

- ROETHLE admitted that, during the charged scheme, he was making no medical judgement when reviewing and signing the patient orders. ROETHLE just opened the orders and signed them without hesitation.
- ROETHLE admitted that he knew signing his name without making any medical judgement was wrong, but it was easy money and ROETHLE wanted to keep making it.
- ROETHLE would add his signature to the order and then click through all of the signature blocks in the medical records to add his signature to each patient record. The process was easy for ROETHLE, as it allowed ROETHLE to use his phone or his computer to access DocuSign and sign the orders by clicking through the document and signing where required.
- At the time, ROETHLE was feeling financial pressure from his wife who was always wanting more, to include a more expensive house that they were moving into the day he was fired from AAKC.
- ROETHLE admitted it was always a problem that he did not have a doctor patient relationship while working for the telemedicine companies.

Therefore, under precedent—and the express terms of Defendant Roethle's proffer agreement—the United States may admit his proffer statements. For those reasons, the United States moves this Court for a pretrial ruling enforcing the express terms of Defendant Roethle's proffer agreement and permitting the United States to admit Defendant Roethle's proffer statements at trial.

## II.    Motion *in Limine* to Admit Business Records as Relevant, Self-Authenticating Non-Testimonial Documents Under Rules 902 and 803(6)

Under Rules 803(6) and 902(11), the United States intends to offer into evidence self-authenticating business records. The United States previously provided notice to Defendant Roethle of its intent to admit the following categories of self-authenticating business records. *See* Exhibit F.

(1)    Qlarant Medicare claims data and records;
(2)    CoventBridge Medicare Part B and DME claims data and records;
(3)    Wisconsin Physician Services Medicare application records;
(4)    Microsoft email records;
(5)    Bank of America records for Defendant Roethle's bank accounts;
(6)    Regions Bank records for Integrity Medical's bank accounts;
(7)    Dropbox records;
(8)    DocuSign records;
(9)    Bothwell Regional Medical Center records;
(10)    Anesthesia Associates of Kansas City ("AAKC") records;
(11)    Children's Mercy Kansas City records;
(12)    Lifetime Fitness records;
(13)    Brian's Gym records;
(14)    BlueCloud records;
(15)    Sprint cellular telephone records for Defendant Roethle's cellphone;
(16)    Socket Telecom internet protocol subscriber records;
(17)    Lumen Technologies internet protocol subscriber records; and
(18)    Charter Communications internet protocol subscriber records.

In the notice, the United States attached business records declarations for each of the above-listed records. Those declarations comply with Rules 803(6) and 902(11). Because each of the above-referenced records is admissible under Rules 803 and 902, the United States respectfully requests a pretrial determination of the admissibility of these self-authenticating business records to ensure the efficiency of the trial.

## III.    Motion *in Limine* to Admit Summary Exhibits Under Rule 1006

The United States intends to offer into evidence summary exhibits under Federal Rule of Evidence 1006, including but not limited to the following summary exhibits: **(1)** summary exhibits

for each health care fraud count, *see e.g.*, Exhibit H; **(2)** exhibits summarizing Medicare claims data, *see e.g.*, Exhibit I; and **(3)** exhibits summarizing payments received by Defendant Roethle, *see e.g.*, Exhibit J.

"Rule 1006 of the Federal Rules of Evidence permits a proponent to 'use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.' Fed. R. Evid. 1006. Such summaries are properly admissible when '(1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary.'" *United States v. Hawkins*, 796 F.3d 843, 865 (8th Cir. 2015) (quoting *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005) (internal quotations omitted). Here, the summary exhibits will satisfy all of the *Green* admissibility requirements: they will fairly summarize voluminous trial evidence; they will assist the jury in understanding the testimony already introduced; and the witnesses who prepared the summary exhibits will be subject to cross-examination.

The fact that here, the underlying evidence for some of the summary exhibits will have been admitted, does not impact the admissibility of the summary exhibits under Rule 1006. *See United States v. Needham*, 852 F.3d 830, 838 (8th Cir. 2017) (finding "no reversible error in the district court's admission of Government's [Summary] Exhibit 51 in part on the basis that "Government's Exhibit 51 consists mostly of properly admitted evidence contained elsewhere in the record") (emphasis added); *see, e.g.*, *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006) (noting that the evidence underlying Rule 1006 summaries need not be introduced into evidence, but nothing in the rule forecloses a party from doing so).

In short, the summary exhibits at issue here—all of which will be disclosed prior to trial—

should be admitted because they fairly summarize voluminous trial evidence, will assist the jury in understanding the testimony already introduced, and a witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary.

## IV.    Motion *in Limine* to Admit Records Relating to Defendant Roethle's Email Account

The United States intends to introduce as evidence at trial certain records obtained from Microsoft relating to Defendant Roethle's email account (stroethle@hotmail.com). These records include Microsoft's subscriber information for Defendant Roethle's email account, as well as emails from that email account.

As for records containing Microsoft's subscriber information for Defendant Roethle's email account, these records are accompanied by a certification that complies with Federal Rule of Evidence 902(11) and establishes the conditions of Federal Rule of Evidence 803(6). These records are therefore admissible because they are self-authenticating and excluded from the rule against hearsay.

As for the emails from Defendant Roethle's email account that the United States will introduce at trial, the United States will authenticate those records at trial under Federal Rule of Evidence 901, which provides that evidence can be authenticated by "distinctive characteristics and the like," such as by its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Specifically, the United States will link these emails to Defendant Roethle through numerous pieces of evidence, including the following: (1) the email account is subscribed in Defendant Roethle's name (Scott T. Roethle MD); (2) the email account lists an alternative email address in Defendant Roethle's name from the medical school where he completed his residency (scott.t.roethle@uth.tmc.edu); (3) the email address for the email account includes Defendant

10

Roethle's first and middle initials and last name (stroethle@hotmail.com); (4) the email address for the email account was listed in contracts that Defendant Roethle produced in response to a grand jury subpoena; (5) many of the emails sent to the email account are addressed to Defendant Roethle, including emails that he produced in response to a grand jury subpoena; (6) many of the emails sent from the email account contain Defendant Roethle's name in the body of the email; and (7) many of the emails in the email account contain information that Defendant Roethle would know.

Taken together, these distinctive characteristics are more than sufficient to authenticate the emails from Defendant Roethle's email account. *See, e.g.*, *United States v. Perez*, 61 F.4th 623, 627 (8th Cir. 2023) (concluding that the Government sufficiently linked the defendant (Vincent Perez) to a social media account through distinctive characteristics such as subscriber information that contained the defendant's personal biographical information, a message in which the account user referred to himself as "Vinny," evidence that the account was created using the defendant's Gmail address, and evidence that the account contained personal photographs of the defendant); *United States v. Fluker*, 698 F.3d 988, 998–99 (7th Cir. 2012) (determining that the Government properly authenticated emails where the email address bore the acronym of a company board of which the author was a member and the contents of the emails contained information that the author would know); *United States v. Safavian*, 435 F.Supp.2d 36, 39–40 (D.C.C. 2006) (explaining that e-mails may be authenticated by examination of their distinctive characteristics, including e-mail addresses that "contain the name of the person connected to the address" and emails that "contain the name of the sender or recipient in the bodies of the e-mail, in the signature blocks at the end of the e-mail, [or] in the 'To:' and 'From:' headings").

## V.     Motion *in Limine* to Preclude Defendant Roethle from Blaming Medicare

The United States moves to preclude Defendant Roethle from arguing that he did not defraud Medicare, or that he did not know that his conduct was fraudulent, because Medicare failed to detect fraud and paid claims that were submitted based on the fraudulent orders that he signed. These kind of "victim blaming" arguments are irrelevant to the issue that the jury must decide: whether or not Defendant Roethle is guilty of the offenses charged in the Indictment.

"[A] fraud victim's negligence is not a defense to criminal charges under the federal fraud statutes." *United States v. Kock*, 66 F.4th 695, 705 (8th Cir. 2023); *see also United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."). To permit such a defense "would invite con men to prey on people of below-average judgment or intelligence, who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection." *Kock*, 66 F. 4th at 705. The rule prohibiting the "victim blaming" defense bars any argument that "a victim's diligence is relevant in determining whether a misrepresentation has been made." *Id.* (approving jury instruction providing that "[i]t is not relevant, and not a defense, that the Internal Revenue Service failed to detect the fraudulent nature of the scheme, nor is it relevant that the Internal Revenue Service might have acted with greater diligence.").

In short, whether Medicare could have, or should have, detected or rejected claims that were submitted based on the fraudulent orders signed by Defendant Roethle is irrelevant to his guilt or innocence. *Id.* ("[T]he IRS's diligence is immaterial in this prosecution."). He should therefore be precluded at trial from attempting to shift blame onto Medicare.

## VI.     Motion *in Limine* to Prohibit Defendant Roethle from Commenting on Potential Punishment, Sentence, or the Availability of Civil Remedies

The United States moves to prohibit Defendant Roethle from commenting on the potential

punishment, sentence, or the availability of civil remedies. None of these are appropriate topics to raise in front of the jury.

The Supreme Court has long recognized that "the jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) (internal quotations omitted) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed."). That is precisely why "[s]entencing is generally one of the areas barred from comment during closing arguments to the jury because the jury is supposed to be concerned solely with the determination of guilt." 75A Am. Jur. 2d Trial § 470.  Eighth Circuit Model Jury Instruction No. 3.12 memorializes this principle by providing that: "[I]f the defendant is found guilty, the sentence to be imposed is [the Court's] responsibility. [The jury] may not consider punishment in any way in deciding whether the [government] . . . has proved its case beyond a reasonable doubt." Thus, where the Court, and not the jury, imposes punishment, "the duration of imprisonment for the crime in question is not a proper subject of comment . . . ." 75A Am. Jur. 2d Trial § 470.

The United States' decision to pursue a criminal prosecution, rather than civil remedies, likewise is not an issue that should be put before the jury. That decision simply "is not an issue for the jury to decide" because it has no bearing on the defendant's guilt or innocence. *United States v. Clay*, 618 F.3d 946, 955–56 (8th Cir. 2010). The same is true with respect to the availability of civil remedies, which is similarly irrelevant to the question of the defendant's guilt or innocence. *See United States v. DeMuro*, 577 F.3d 550, 565 (8th Cir. 2012) (ruling that the district court properly excluded evidence regarding the IRS's criminal prosecution referral "because it opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to

pursue the matter civilly rather than criminally").

In sum, the law prohibits Defendant Roethle from commenting in any way on the potential punishment and sentence that he faces, as well as the availability of civil remedies. Therefore, the United States requests that the Court enter an order precluding Defendant Roethle commenting on any of these issues in front of the jury.

## VII.    Motion *in Limine* to Preclude Defendant Roethle from Making Any Selective or Vindictive Prosecution Arguments at Trial

The United States moves to preclude Defendant Roethle from making any argument in front of the jury relating to vindictive or selective prosecution. In particular, the United States moves to preclude evidence or argument at trial that law enforcement chose to target Defendant Roethle and not other physicians, or that other co-conspirators have not faced charges.

"In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (internal quotations omitted). "[T]he decision to prosecute is particularly ill-suited" for external review because "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* Given the inherent difficulty in evaluating the Government's decision to prosecute, any attempt by a defendant to challenge that decision by claiming vindictive or selective prosecution "should be addressed [by the court] before trial." *Clay*, 618 F.3d at 955–56 (8th Cir. 2010).

To succeed on such a claim, a defendant must demonstrate "1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." *United States v. White*, 928 F.3d

14

734, 742–43 (8th Cir. 2019). This "standard is a demanding one[.]" *Id.* at 743 (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). "Without sufficient facts that show otherwise, the Government's case is presumed to have proceeded in good faith and with a nondiscriminatory purpose." *United States v. Barber*, Case No. 4:21-cr-00384 SEP/NCC, 2022 WL 4239047, at *7 (E.D. Mo. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4235139 (E.D. Mo. Sept. 14, 2022).

Absent Defendant Roethle making this "demanding" showing to the Court before trial, he should be barred from making any arguments during trial in front of the jury regarding the United States' charging decision in this case.

**VIII.    Motion *in Limine* to Exclude Unfounded Allegations of Law Enforcement Misconduct**

The United States moves to exclude any argument from Defendant Roethle concerning unfounded allegations of law enforcement misconduct because such allegations are irrelevant, unduly prejudicial, and would only confuse the jury.

The Eighth Circuit addressed the problem with unfounded allegations of law enforcement misconduct in *United States v. Sanders*, 196 F.3d 910 (8th Cir. 1999). There, the defense repeatedly asked questions in front of the jury that the district court perceived to be part of an effort to suggest that law enforcement had conducted an illegal stop, despite the court's previous ruling that the stop was lawful. *Id.* at 914. As a remedy for such a baseless suggestion, the district court submitted a jury instruction, which informed jurors that law enforcement's actions in connection with the stop were lawful. *Id.* The Eighth Circuit affirmed that instruction based on the concern that the defense "had confused the jury" by improperly insinuating that law enforcement's actions were illegal. *Id.; United States v. Ledra Craig*, 4:20-cr-00403, Doc. 180 (E.D. Mo. Jan. 12, 2023) (barring argument regarding unfounded allegations of law enforcement misconduct).

15

To preempt Defendant Roethle from attempting to make similarly baseless allegations here, the Court should preclude him from making any argument in front of the jury concerning unfounded allegations of law enforcement misconduct.

## IX.    Motion *in Limine* to Limit Cross-Examination of Government Witnesses Under Federal Rule of Evidence 609

The United States moves to limit Defendant Roethle's cross-examination of Government witnesses with prior convictions to only what is allowed under Federal Rule of Evidence 609. Under Rule 609, "[t]he following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:"

> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> > (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> > (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.

Fed. R. Evid. 609(a).

"While a witness may be impeached by inquiring into his prior convictions, the scope of such examination is strictly limited in order to avoid the confusion resulting from the trial on collateral issues, and also to avoid unfairness to the witness." *United States v. Street,* 548 F.3d 618, 627 (8th Cir. 2008) (internal citations and quotations omitted). Specifically, defense cross-examination regarding a Government witness's prior conviction is limited to what crime the witness was convicted of committing. *Id.* Any further inquiry "would be to relitigate [the witness's] prior conviction," which "is precisely the sort of confusing, collateral issue" that has long been prohibited. *Id.* (citing *United States v. Roenigk,* 810 F.2d 809, 814 (8th Cir.1987)).

Accordingly, Defendant Roethle's cross-examination of Government witnesses with qualifying Rule 609 prior convictions should be limited to only the nature of those prior convictions.

## X.     Motion *in Limine* to Prohibit Impermissible Argument as to Missing Witnesses

Numerous witnesses, both civilian and law enforcement, played a role in the investigation in this case. The United States has provided all discoverable law enforcement reports to Defendant Roethle in discovery. The United States anticipates that it will not call as witnesses in its case in chief at trial all of the individuals identified in those reports. However, the identities of those individuals are known to Defendant Roethle. Should he desire to call any of them as witnesses, Federal Rule of Criminal Procedure 17 provides him with the necessary subpoena authority to do so. Because these witnesses are known to Defendant Roethle and are not within the unique control of the United States, the United States moves to prohibit Defendant Roethle from making an improper argument regarding the United States' decision not to call certain witnesses at the time of trial.

As the notes to the Eighth Circuit Model missing witness instruction (4.16) state, the request for a missing witness instruction is to "be applied with caution" because "the applicable rule in this Circuit" is that:

> Absent unusual circumstances such as knowingly concealing evidence favorable to a defendant, the government has a wide discretion with respect to the witnesses to be called to prove its case. The government is not ordinarily compelled to call all witnesses competent to testify including special agents or informers.

(citing *United States v. Williams*, 604 F.2d 1102, 1117 (8th Cir. 1979); *United States v. Mosby*, 422 F.2d 72, 74 (8th Cir. 1970)). Generally, a missing witness instruction is "not appropriate" unless the defense shows "that the government possesses the sole power to produce the witness." *United States v. Cole*, 380 F.3d 422, 427 (8th Cir. 2004) (citing *United States v. Martinez-Figueroa*, 363 F.3d 679, 682 (8th Cir. 2004)). For that reason, a district court's decision not to

give a missing witness instruction has been affirmed in each of the following circumstances:

(1)     where the ability to produce the witness was not solely or otherwise in the power of the Government, such as where a witness could not testify due to illness (*Williams*, 604 F.2d at 1117);

(2)     where the witness was not subpoenaed by either party (*Williams*, 604 F.2d at 1120; *United States v. Higginbotham*, 451 F.2d 1283, 1286 (8th Cir. 1971));

(3)     where the witness was argued to be "unavailable" because he worked for the Government (*United States v. Anders*, 602 F.2d 823, 825 (8th Cir. 1979));

(4)     where the witness/informant's whereabouts were no longer known to the Government (*United States v. Johnson*, 562 F.2d 515, 517 (8th Cir. 1977));

(5)     where there was no showing that the Government possessed the sole power to produce the witnesses (*United States v. Kirk*, 534 F.2d 1262, 1280 (8th Cir. 1976));

(6)     where the defendant had not made a motion to produce or attempted to subpoena the witness (*United States v. Williams*, 481 F.2d 735, 737-8 (8th Cir. 1973)).

Here, the United States is unaware of any witness uniquely in the power of the United States who is not equally available to Defendant. Defendant Roethle should therefore be prohibited at trial from making improper argument relating to purportedly missing witnesses.

## XI.    Motion *in Limine* to Preclude Defendant Roethle's Introduction of Self-Serving Hearsay

During trial, Defendant Roethle may attempt to introduce self-serving hearsay through the cross-examination of Government witnesses or through the direct examination of defense witnesses other than himself. When the United States offers a defendant's statements in evidence, the statements are the non-hearsay admissions of a party opponent under Federal Rule of Evidence 801(d)(2)(A). But "[w]hen offered by the Defendant, such statements are classic, self-serving

inadmissible hearsay. It is well accepted that 'a party's own statement is admissible as non-hearsay only if it is offered against that party.'" *United States v. Bravata*, No. 11-CR-20314, 2013 WL 692955, at *1 (E.D. Mich. Feb. 26, 2013) (citing *Stalbosky v. Belew*, 205 F.3d 890, 94 (6th Cir.2000)); *see also Williamson v. United States*, 512 U.S. 594, 618 (1994) ("In the criminal context, a self-serving statement is one that tends to reduce the charges or mitigate the punishment for which the declarant might be liable.").

The Eighth Circuit has ruled that "no abuse of discretion lies in a district court's refusal to admit evidence of self-serving statements of innocence made by the defendant after the offense was discovered." *United States v. Woosley*, 761 F.2d 445, 449 (8th Cir. 1985). "Such evidence lacks the required indicia of trustworthiness and reliability which support the admission of hearsay under exceptions to the hearsay rule." *Id; see also United States v. Griffin*, 215 F.3d 866, 868 (8th Cir. 2000) (upholding trial court's exclusion of self-serving hearsay statements made by the defendant to other people).

Further, if the United States introduces the incriminating portions of a defendant's statements, the defendant cannot circumvent the prohibition against self-serving hearsay by relying on the "rule of completeness" rationale drawn from Federal Rule of Evidence 106. Rule 106 provides that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." Fed. R. Evid. 106. "Rule 106, the rule of completeness . . . does not empower a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception." *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (cleaned up). The only time that Rule 106 permits the admission of a defendant's otherwise inadmissible

self-serving hearsay statement is when that statement is necessary to correct a false or misleading impression. *See* Fed. R. Evid. 106 advisory committee's note to 2023 amendment ("The amendment does not give a green light of admissibility to all excised portions of statements. It does not change the basic rule, which applies only to the narrow circumstances in which a party has created a misimpression about the statement, and the adverse party proffers a statement that in fact corrects the misimpression.").

Based on the foregoing, Defendant Roethle should be precluded from introducing any of his own exculpatory hearsay statements at trial unless and until he demonstrates that his additional statements are necessary to correct a false or misleading impression. *See, e.g., United States v. Thurber*, 106 F.4th 814, 831 (8th Cir. 2024) (holding that the district court properly excluded defendant's supposedly exculpatory text messages because those messages did not "explain the admitted evidence, provide context, avoid misleading the jury, or ensure a fair and impartial understanding of the admitted evidence").

## XII.   Motion *in Limine* to Prohibit Questions Seeking to Elicit an Opinion About the Legality or Illegality of Defendant Roethle's Actions

Defendant Roethle should be prohibited from requesting that any witness opine as to whether his actions were legal or illegal because it invades the province of the Court and usurps the Court's function. *See, e.g.*, *United States v. Bull*, 8 F.4th 762, 768 (8th Cir. 2021) ("[E]xpert testimony on legal matters is not admissible because matters of law are for the trial judge, and it is the judge's job to instruct the jury on them.") (cleaned up)); *United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981) ("[W]here the opinion proffered necessarily encompasses a legal conclusion, a trial court may very properly conclude that a response would not be helpful to the trier of fact."). Defendant Roethle should also be prohibited from requesting that any witness opine as to whether his actions were unlawful, knowing, or willful because such testimony would not be helpful to the

jury. *See United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) ("When, as here, a witness is asked whether the conduct in issue was 'unlawful' or 'wilful' or whether the defendants 'conspired,' terms that demand an understanding of the nature and scope of the criminal law, the trial court may properly conclude that any response would not be helpful to the trier of fact.").[2]

In short, the United States requests the Court prohibit questions at trial that call for improper legal conclusions regarding the legality or illegality of Defendant Roethle's actions.

### XIII.  Motion *in Limine* to Preclude Improper Character Evidence

The United States moves *in limine* for an order limiting the testimony of any defense character witnesses to their opinions about the defendant's honesty, truthfulness, and being law abiding, and the defendant's reputation in the community for the same.  In particular, the Court should prohibit Defendant Roethle from introducing evidence concerning other uncharged occasions of purportedly lawful or "good" medicine practiced by Defendant Roethle.  Such evidence is irrelevant and inadmissible character evidence under Federal Rules of Evidence 404(a)(1) and 403.

> #### A.  As a general matter, Defendant Roethle may only offer character evidence of a pertinent trait and is not permitted to offer such evidence in the form of specific instances of conduct.

While defendants in criminal cases may offer character evidence at trial, they are limited in the subject matter and form of such evidence.  Federal Rule of Evidence 404(a)(2)(A) limits admissible character evidence offered by a defendant to evidence of a "pertinent trait."  A pertinent character trait is one that is relevant to the offenses charged.  *United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002).  Federal Rule of Evidence 405(a) provides that character witnesses may testify

---

[2] Questions regarding whether prescriptions ordered by Defendant Roethle were the result of medical necessity determinations do not call for legal conclusions and are thus permissible. *See United States v. Volkman*, 797 F.3d 377, 389 (6th Cir. 2015) (ruling that the district court did not abuse its discretion by admitting an expert witness's testimony that prescriptions issued by the defendant fell outside the scope of a legitimate medical practice).

concerning a pertinent trait in the form of an opinion or by testimony about the person's reputation in the community. *United States v. Drapeau*, 644 F.3d 646, 654 (8th Cir. 2011) ("In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.").  Taken together, these rules permit character evidence, normally considered to be propensity evidence, to be introduced by a defendant in a criminal case to imply that the defendant is unlikely to have committed the crime.  *United States v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir. 1996) ("Character evidence is undeniably relevant in determining probabilities of guilt.") (citing *Michelson v. United States*, 335 U.S. 469, 476 (1948)).

Where, as here, a character trait is not an element of the charge or a defense, Defendant Roethle is not permitted to offer evidence in the form of specific instances of conduct to prove said character or a character trait.  Fed. R. Evid. 405(b).  Accordingly, defense character witnesses should be limited to identifying themselves, indicating how long and in what capacity they have known Defendant Roethle, and then stating their opinion about the pertinent trait or Defendant Roethle's reputation for that pertinent trait in the community. *See United States v. Kinsella*, 545 F. Supp. 2d 158, 161 (D. Me. 2008) ("A defendant is thus permitted to call a witness, establish his contemporaneous and relevant knowledge of the defendant's reputation, and elicit a favorable response.  He is not permitted to ask questions about specific instances of good conduct or specific character traits.").

**B.    Defendant Roethle cannot offer evidence of purportedly lawful or "good" medical practice on other occasions, because such prior "good acts" are irrelevant to the charged conduct and inadmissible character evidence.**

"Courts have held that the general character trait of law-abidingness is pertinent to almost all criminal offenses."  *In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003); *see also Michelson*

335 U.S. at 483 (holding possession of characteristics, including law-abidingness, would seem incompatible with offering a bribe to a revenue agent which was the crime charged); *United States v. Angelini*, 678 F.2d 380, 382 (1st Cir. 1982) ("With very few exceptions, the cases hold that evidence of a defendant's character as a law-abiding person is admissible."); *United States v. De Leon,* 728 F.3d 500, 505 (5th Cir. 2013) (holding district court erred in excluding testimony by mother that her son, a doctor charged with health care fraud, was law abiding).

However, evidence of non-criminal conduct on occasions, separate from those charged, is not admissible because the evidence involves totally different incidents and is not probative of the defendant's acts and intent related to the charges in the Indictment.  *See, e.g.*, *United States v. Ahmed*, 73 F.4th 1363, 1384 (11th Cir. 2023) ("Evidence of good conduct is not admissible to negate criminal intent." (alterations in original));  *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of non-criminal conduct to negate inference of criminal condition is generally irrelevant"); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985) (finding no error in excluding testimony of an influence peddler that the defendant, a judge, did not accept kickbacks from him).  As courts have recognized, "[a] single occurrence of lawful conduct is 'simply irrelevant' to other occurrences of unlawful conduct."  *United States v. Chambers*, 800 Fed. Appx. 43, 46 (2d Cir. 2020); *see also United Stats v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) ("The fact that Marrero did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment.").

Here, Defendant Roethle is charged with health care fraud. Defendant Roethle may attempt to offer evidence that he provided necessary, legitimate, and/or beneficial medical care to some of

his patients and on occasions other than those charged in the Indictment.  This Court should preclude such evidence because it is not probative of Defendant Roethle's actions and intent as to the prescriptions and patients at issue in the counts charged in the Indictment.

As the Eleventh Circuit recently made clear, so-called "good-care" evidence is irrelevant and inadmissible character evidence in a case such as this.  *See United States v. Ifediba*, 46 F.4th 1225 (11th Cir. 2022).  In *Ifediba*, the defendant, a medical doctor charged with health care fraud and unlawful distribution of controlled substances, attempted to introduce evidence that he "provided legitimate medical treatment to some patients" in order to rebut the government's claim that he operated a pill mill and submitted insurance claims for medically unnecessary services.  *Id.* at 1231–34, 1238.  In upholding the district court's refusal to admit such evidence, the court of appeals agreed that this evidence "was merely an attempt to portray Ifediba as a person of good character by pointing to his prior good acts," which is prohibited by Federal Rule of Evidence 404(a).  *Id.* at 1238.  Likewise, any purported "good care" evidence offered by Defendant Roethle would serve no purpose other than to imply that he acted in conformity with that care on the occasions charged in this case or to negate his criminal intent, "which makes it precisely the kind of evidence that Rules 404(a) and 405(b) prohibit."  *Ahmed*, 73 F.4th at 1384.  Accordingly, the United States requests that the Court exclude any evidence of specific acts offered to establish the trait of being law-abidingness and limit testimony to opinion and reputation evidence.  *See Ifediba*, 46 F.4th at 1238 ("[T]he government never alleged that Ifediba unlawfully treated every patient . . . . Thus, it was no defense that Ifediba lawfully treated some patients.").

## XIV.  Motion *in Limine* to Admit Summary Witness Testimony

At trial, the United States intends to elicit summary testimony from federal agents. "The testimony of a summary witness may be received so long as she bases her summary on evidence

received in the case and is available for cross-examination." *United States v. Ellefsen*, 655 F.3d 769, 780 (8th Cir. 2011) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980)); *see also United States v. Robinson*, 439 F.3d 777, 781 (8th Cir. 2006) (same). Applied here, the summary testimony elicited from federal agents will involve only admitted evidence, and those federal agents will be available for cross-examination. Such testimony is necessary to educate the jury here because this case involves voluminous evidence, including medical records, prescription data, claims data, bank records, and email communications.

The testifying federal agents will use demonstrative exhibits, which summarize such voluminous evidence, to facilitate their testimony. The Eighth Circuit has consistently held, and the Federal Rules of Evidence establish, that "[d]emonstrative exhibits may be admitted, at the trial court's discretion, as 'educational tool[s] for the jury.'" *United States v. Two Elk*, 536 F.3d 890, 905 (8th Cir. 2008) (quoting *Wipf v. Kowalski*, 519 F.3d 380, 387 (7th Cir. 2008)); *see also United States v. Fechner*, 952 F.3d 954, 960 (8th Cir. 2020) (finding no abuse of discretion where "the demonstrative exhibits at issue merely provided a visual aid during Agent Thomas's testimony regarding other evidence. The videos described in the demonstrative exhibits were properly submitted into evidence, and the district court did not abuse its discretion by receiving the summary demonstrative exhibits."). Here, where the testimony of the testifying federal agents will summarize voluminous admitted evidence, visual demonstratives outlining key portions of that evidence is of particular importance in "educating the jury" and making the testimony understandable. The use of this demonstrative exhibit at trial is consistent with both the rules of evidence and Eighth Circuit precedent. *See Crockett*, 49 F.3d at 1361–62; *Downen*, 496 F.2d at 321.

**XV.    Motion *in Limine* to allow the United States to show the jury transcripts of Defendant Roethle's recorded interview and telephone conversation**

The United States plans to show the jury transcripts of the recordings that will be played, including transcripts of **(1)** the recorded interview that Defendant Roethle participated in with the investigators on this case, and **(2)** Defendant Roethle's recorded telephone conversation with an employee of his former employer (Anesthesia Associates of Kansas City). In the Eighth Circuit, the decision to allow the use of transcripts to assist jurors in listening to a tape recording lies within the sound discretion of the district judge. *United States v. Placensia*, 352 1157, 1166 (8th Cir. 2003) (noting trial court's discretion to admit transcripts even without tape recordings); *see also United States v. Martinez*, 951 F.2d 887, 888 (8th Cir. 1991); *United States v. McMillan*, 508 F.2d 101, 105 (8th Cir. 1974). It is appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to recordings.

The use of transcripts aids the jury in a number of ways. Among these are: **(1)** to help the jurors follow often poor-quality recordings (*United States v. Riascos*, 944 F.2d 442, 443 (8th Cir. 1991)); **(2)** to identify speakers (*United States v. Henneberry*, 719 F.2d 941, 949 (8th Cir. 1983)); **(3)** to assist the jury when portions of the recording are inaudible (*United States v. Willis*, 774 F.2d 258, 259 (8th Cir. 1985)); and **(4)** to aid the jury in understanding colloquialisms in the conversation (*United States v. Delpit*, 94 F.3d 1134, 1148 (8th Cir. 1996)). The United States intends to play audio transcripts of the admitted recordings while a rolling transcript appears on the court monitors. In both cases, there will be a highlighted portion of text rolling and synched to the audio file. This is an aid to assist the jury in identifying the speakers and following the conversation. The United States will also offer the following Eighth Circuit Model limiting instruction:

> The transcript is for the limited purpose of helping you follow the conversation as you listen to the recording, and also to help you keep track of the speakers. Differences in meaning between what you hear in the recording and read in the transcript may be caused by such things as the inflection in a speaker's voice. It is what you hear, however, and not what you read, that is the evidence.

*See* 8th Cir. Model Jury Instructions – Criminal 2.06A (2021). Therefore, the United States respectfully requests permission to show the jury transcripts of **(1)** the recorded interview that Defendant Roethle participated in with the investigators on this case and **(2)** Defendant Roethle's recorded telephone conversation with an employee of his former employer (Anesthesia Associates of Kansas City).

## XVI.  Motion *in Limine* to Allow the United States to Call Witnesses on More Than One Occasion

Based on the nature of the underlying investigation, and the volume of evidence, the United States may call federal agents to testify on more than one occasion in this case. Consistent with the goal of an orderly and understandable trial, the United States requests that the cross-examination of the witness who will be testifying more than once be limited to the subject of their direct examination.

The Eighth Circuit has commended such a procedure as a "way to clearly present an organized factual recital in an extended conspiracy trial." *United States v. Jackson*, 549 F.2d 517, 529 (8th Cir. 1977).  In *Jackson*, the witness in question was subject to cross-examination only on the subject matter of each successive appearance (as well as credibility), until his final appearance when a full cross-examination was permitted.  In finding such a procedure appropriate, the court noted that this manner of presentation "provided each defendant with numerous opportunities for cross-examination as to both credibility and the subject matter of his testimony." *Id*. at 528; *see also United States v. DeLuna*, 763 F.2d 897, 911 (8th Cir. 1985) (holding that testimony in installments was not an abuse of discretion noting that "[i]n this circuit, the manner and order of

interrogation and presentation of evidence are matters committed to the discretion of the district court."); *see also United States v. Puckett*, 147 F.3d 765, 770 (8th Cir. 1998); *United States v. Dimora*, 843 F. Supp. 2d 799, 822 (N.D. Ohio 2012); *United States v. Edelin*, 128 F. Supp. 2d 23, 47 (D.D.C. 2001).

The United States District Court for the Eastern District of Missouri has granted motions approving this method of witness presentation in several cases. *See, e.g., United States v. Anderson*, Case No. 4:13CR00164 RWS; *United Sates v. Williams*, Case No. 4:08CR00566 CDP. Therefore, the United States respectfully requests that it be permitted to call witnesses on more than one occasion.

## XVII. Motion *in Limine* to Exclude Evidence Not Produced in Response to Request for Reciprocal Discovery

On multiple occasions throughout this case, the United States has requested reciprocal discovery from Defendant Roethle pursuant to Fed.R.Evid. 16(b)(1)(A) and (B). The reciprocal discovery rule, Rule 16(b)(1), states that if the United States complies with a defendant's requested disclosures, which here, the United States has, the defense must provide the United States, upon request, with all of the items identified in subsections (A) and (B), to wit:

(1) Information Subject to Disclosure.
(A) Documents and Objects. If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
(i) the item is within the defendant's possession, custody, or control; and
(ii) the defendant intends to use the item in the defendant's case-in-chief at trial.
(B) Reports of Examinations and Tests. If a defendant requests disclosure under Rule Rule 16(a)(1)(F) and the government complies, the defendant must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
(i) the item is within the defendant's possession, custody, or control; and

(ii) the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony.

In *United States v. Eason*, 829 F.3d 633, 639 (8th Cir. 2016), the Eighth Circuit affirmed the district court's exclusion of evidence the defendant attempted to admit at trial, despite having filed to provide them in discovery pursuant to the United States' request for reciprocal discovery, finding that "[t]he defense's failure to turn them [the evidence at issue] over to the government was a violation of that [Fed.R.Evid.16(b)(1)] rule" and that therefore, exclusion was an appropriate sanction.

Applied here, the United States made its request for reciprocal discovery years ago, and most recently at the February 4, 2025 status conference before this Court. At that conference, this Court ordered Defendant Roethle to produce all Rule 16 materials by February 28, 2025. *See* Doc. 219. To date, the United States has yet to receive a single item of reciprocal discovery from Defendant Roethle. Therefore, the United States respectfully requests that this Court preclude Defendant Roethle from admitting any evidence at trial that he has failed to disclose under Rule 16.

## XVIII. Motion in Limine to preclude an improper and untimely advice of counsel defense

According to the Eighth Circuit, "[t]o rely upon the advice of counsel in his defense, a defendant must show that he: (i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal." *United States v. Naushad*, 68 F.4th 380, 387 (8th Cir. 2023) (quoting *United States v. Wolfe*, 781 Fed. Appx. 566, 568 (8th Cir. 2019)). The Eighth Circuit has added that "[a] defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction." *United States v. Petters*, 663 F.3d 375, 384 (8th Cir. 2011). When a

defendant raises the advice of counsel defense, the attorney-client privilege is waived. *United States v. Workman*, 138 F.3d. 1261, 1263–64 (8th Cir. 1998). Along with a waiver of the attorney-client privilege, a defendant must also provide sufficient pre-trial discovery of attorney-client communications to justify the defense. This discovery requirement is imposed by courts in part so that the trial court is afforded an opportunity to determine whether a sufficient foundation exists to support presentation of the defense to the trier of fact. *See*, *e.g.*, *United States v. Wolfe*, 781 F. App'x 566, 569 (8th Cir. 2019) (affirming district court's grant of government's motion *in limine* prohibiting defendant from raising an advice of counsel defense at trial because of defendant's failure to proffer evidence establishing full disclosure and reliance).

Indeed, courts across the country require that defendants provide sufficient pre-trial notice of an advice of counsel defense and that defendants disclose the necessary discovery to support such a defense adequately in advance of trial. *See e.g.*, *United States v. Crowder*, 325 F. Supp. 3d 131, 139 (D.D.C. 2018) (requiring defendant to provide notice and discovery as to any potential advice of counsel defense two weeks prior to trial); *United States v. Cooper*, 283 F. Supp. 2d 1215, 1225 (D. Kan. 2003) (same); *see also United States v. Brik*, No. 15-CR-78 (SRN/BRT), 2016 WL 3753080, at *3 (D. Minn. July 11, 2016) ("Failure to promptly disclose an advice-of-counsel defense may constitute waiver of the defense."); *United States v. Dallmann*, 433 F. Supp. 3d 804, 812-13 (E.D. Va. 2020) (holding that courts have inherent authority to impose requirement of pretrial notice of advice-of-counsel defense and requiring notice ten days prior to trial in light of complexity of advice-of-counsel defense and potential for discovery of otherwise-privileged documents).

Here, Defendant Roethle has not represented that he will assert an advice of counsel defense, and he has also not produced any attorney-client communications that would justify such

a defense. For those reasons, the United States moves this Court for an order to preclude any advice of counsel defense.

## XIX.    Motion in Limine to preclude Defendant Roethle from presenting legally baseless theories

Given Defendant Roethle's claims in his motion to dismiss the Indictment and his statements made during in-court proceedings, the United States anticipates that Defendant Roethle intends to present various theories at trial that are meant to challenge the Court's jurisdiction. As this Court has already observed, Defendant Roethle's arguments are "sovereign- citizen type arguments and they have no legal basis." *See* Doc. 221, p. 4. These arguments, which lack any support in law, present legal questions—which this Court has already resolved—and do not present factual issues to be decided by the jury. Simply put, Defendant Roethle's legally baseless sovereign citizen arguments are not relevant or admissible at trial. Therefore, the United States respectfully requests that this Court prevent Defendant Roethle from referencing, through evidence, argument, or statements, any of his previously rejected, legally baseless arguments.

## XX.    Motion in Limine to preclude Defendant Roethle from testifying without taking the witness stand

Although the defendant is entitled to represent himself, he should not be permitted to use his *pro se* representation as a subterfuge to testify or present evidence without being subject to cross-examination. For example, in *United States v. Oglesby*, 764 F.2d 1273 (7th Cir. 1985), the Seventh Circuit held that a *pro se* defendant should be warned not to speak in the first person in his comments on the evidence and that the jury should be carefully instructed that nothing the *pro se* defendant says in his capacity as a "lawyer" should be considered as evidence. *Id.* at 1276. Accordingly, the Government requests that this Court warn Defendant Roethle not to speak in the first person while commenting on the evidence, and additionally requests an instruction notifying the jury that nothing Defendant Roethle says in his capacity as a "lawyer" should be considered as

evidence.

**XXI.  Motion in Limine to revoke Defendant Roethle's self representation if he deliberately engages in serious and obstructionist misconduct**

The right of self-representation is not absolute. "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *see also United States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010). "A defendant is not entitled to use the right of self-representation as a tactic for delay, for distortion of the system, or for manipulation of the trial process." *Mosley*, 607 F.3d at 558 (citing *United States v. Edelmann*, 458 F.3d 791, 808-9 (8th Cir. 2006) (internal quotations omitted)).

As the Eighth Circuit recently recognized, "[r]efusing to participate in the proceedings, if continued at trial, is serious obstructionist misconduct," that can result in revoking a defendant's self representation. *United States v. Willis*, 101 F.4th 577, 584–85 (8th Cir. 2024). In *United States v. Luscombe*, for example, the Eighth Circuit upheld revocation of self-representation in the middle of trial when the defendant "repeatedly and frequently defied the district court's orders not to argue with witnesses, not to interrupt witnesses, not to interject his own testimony during his examination of witnesses, to speak clearly and slowly for the jury and court reporter, and to speed up his cross examinations." 950 F.3d 1021, 1030 (8th Cir. 2020). This conduct "was more than just poor 'lawyering' -- it interrupted the trial process and was seriously obstructive." *Id.* Therefore, if Defendant Roethle displays similar conduct in this case, the United States requests that the Court revoke his self representation.

**XXII.  Motion *in Limine* to admit expert testimony from HHS-OIG Special Agent Mitchell Blum**

At trial, the United States will offer expert witness testimony from Special Agent (SA) Mitchell Blum of the U.S. Department of Health and Human Services – Office of Inspector

General. As has been disclosed to Defendant, the United States anticipates that SA Blum will rely on his education, training, experience, and qualifications to testify regarding the operations, methods, patterns, and practices of medical clinics, physicians, and DME suppliers with respect to orders for, the provision of, and billing Medicare for DME, cancer screening tests, and topical cream prescriptions in a legitimate setting, as well as the operations, methods, patterns, and practices of medical clinics, physicians, and DME suppliers involved in DME fraud schemes. *See* Exhibit G attached hereto (Government's expert witness disclosure). SA Blum will not offer any testimony based on the specific facts of this case, including whether Defendant was involved in a DME fraud scheme. *Id.* Because SA Blum's anticipated "modus operandi" expert testimony will help educate the jury on how a complex DME fraud scheme commonly works, the United States seeks a pretrial ruling that, subject to SA Blum's qualification as an expert, his anticipated testimony will be admissible at trial.

"Decisions concerning the admissibility of expert testimony lie within the broad discretion of the trial court and will not be reversed on appeal unless there has been an abuse of that discretion." *United States v. Anderson*, 446 F.3d 870, 874 (8th Cir. 2006) (internal quotations omitted). "Federal Rule of Evidence 702(a) permits expert testimony if a witness's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Spencer*, 700 F.3d 317, 321 (8th Cir. 2012) (internal quotations omitted). "Thus, when determining the admissibility of expert testimony, the relevant inquiry is whether [the expert's] testimony would be 'helpful' to the jury's understanding of the evidence." *United States v. Johnson*, 28 F.3d 1487, 1496–97 (8th Cir. 1994) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

The Eighth Circuit has recognized that expert testimony regarding how complex schemes

commonly work is admissible because it helps the jury understand the typical methods and techniques of criminals involved in those schemes, which is something that average jurors would otherwise be unfamiliar with. For example, in *United States v. Chaika*, the district court ruled that expert testimony about "the structure of the mortgage loan industry and how a mortgage fraud scheme could operate" was admissible:

> I think the jurors are entitled to know how certain transactions, if they are fraudulent, how they are put together, what are the indicia; just like in a drug transaction how drug dealers deal with cash and scales and with guns and all that sort of thing, so they can then listen to the testimony and see whether part or all of it fits. But don't let that witness go over the line and say in the next question now here is what happened in this case.

695 F.3d 741, 745 (8th Cir. 2012). The Eighth Circuit affirmed that ruling, explaining that "[i]t is well within the discretion of a district court to allow law enforcement officials to testify as experts concerning the modus operandi of [criminals] in areas concerning activities which are not something with which most jurors are familiar." *Id.* at 746 (second alteration in original) (internal quotations omitted). On that same basis, in *United States v. Primm*, the Eighth Circuit held that the district court properly admitted modus operandi expert testimony from a federal agent regarding "common methods of tax evasion." 63 F.4th 1186, 1190 (8th Cir. 2023); *see also United States v. Whitehead*, 176 F.3d 1030, 1035 (8th Cir. 1999) (holding that the district did not abuse its discretion by admitting special agent's expert testimony on "the most common characteristics of check kiting").

Although the Eighth Circuit has not addressed the admissibility of modus operandi expert testimony in the health care fraud context, other courts have determined that such testimony is admissible in health care fraud cases, including specifically cases involving DME fraud schemes. *See, e.g.*, *United States v. Anieze-Smith*, 770 F. App'x 342, 344 (9th Cir. 2019) (unpublished) (ruling that special agent's expert testimony was properly admitted because it was "helpful to the

jury to explain the modus operandi of fraudulent durable medical equipment supply schemes"); *United States v. Tcherniavsky*, 708 F. App'x 444, 445 (9th Cir. 2018) (unpublished) ("The district court did not abuse its discretion by not excluding expert testimony on the modus operandi of typical durable medical equipment ('DME') Medicare fraud schemes. . . . Here, the testimony proffered satisfied the requirements of Rule 702 to educate the jury about the methods and techniques used in Medicare fraud schemes involving DME."); *see also United States v. Rahim*, 771 F. App'x 605, 613 (6th Cir. 2019) (explaining that special agent was permitted to rely "on his specialized training and experience with the FBI to explain that certain evidence generally makes the FBI suspicious of healthcare fraud").

In sum, SA Blum's anticipated expert testimony falls squarely within the type of "modus operandi" testimony that the Eighth Circuit and other courts have deemed admissible in cases involving complex fraud schemes like the DME fraud scheme at issue here. Accordingly, the United States requests that the Court issue a pretrial ruling that SA Blum's proposed testimony will be admissible at trial, subject to his qualification as an expert under Rule 702.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court **GRANT** its Motions *in Limine*.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the defendant.

*/s/ Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney
