UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-cr-00465-CDP |
| | ) |
| SCOTT ROETHLE, M.D., | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are Defendant Scott Roethle, M.D., ("the Defendant"), representing himself along with standby counsel, Kevin Curran, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Count 2 of the Indictment, the United States agrees to dismiss Counts 1 and 3 through 25 at the time of sentencing. The United States further agrees that no further federal criminal prosecutions will be brought in this District relative to the Defendant's (a) solicitation and receipt of illegal kickbacks for referring patients to durable medical equipment

1

("DME") companies, pharmacies, and medical testing laboratories for DME, genetic testing, and topical prescription medications (collectively referred to as "Health Care Services"), and **(b)** the creation, use, and submission of false documents related to health care matters, including patient records and reimbursement claims for Health Care Services, from the timeframe referenced in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the United States will not ask for a sentence higher than 60 months' incarceration. The defendant may ask for any sentence authorized by law.

### 3. ELEMENTS:

As to Count 2, the defendant admits to knowingly violating Title 18, United States Code, Section 1347, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly executed or attempted to execute a scheme to defraud a health care benefit program:

*Two*, the defendant did so with the intent to defraud;

*Three*, the defendant did so in connection with the payment for health care benefits or services;

*Four*, the Medicaid and Medicare Programs are public plans, affecting commerce in some way or degree, under which health care benefits or services are to be provided to individuals.

The parties agrees that the elements of this crime are satisfied not only when a defendant has actual knowledge, but also when a defendant is deliberately ignorant of the unlawful objective.

2

The elements of deliberate ignorance are:

*One,* the defendant must subjectively believe that there is a high probability that a fact exists; and

*Two,* the defendant must take deliberate actions to avoid learning of that fact.

4. **FACTS:** The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Working primarily as an anesthesiologist, the Defendant has been a licensed medical doctor since 2009. During the pertinent timeframe laid out in the Indictment, the Defendant was licensed to practice medicine in 22 states, including Missouri.

From 2017 until 2020, the Defendant contracted with several companies purportedly to perform work as a telemedicine doctor. Those companies included but were not limited to the following: Encore Telemed/LocumTenens USA, MedSymphony, Expansion Media, Pioneer Telemedicine, AtMed, United Health Network, Lifeline Recruiting, BodMD, Firefly XD, and Dial 4ME. Working on behalf of these companies, the Defendant ordered medically unnecessary durable medical equipment, pain creams, and genetic tests (hereinafter referred to as "Health Care Services") for thousands of patients.

As part of the Defendant's work with these companies during the timeframe outlined in the Indictment, the Defendant was granted access to electronic portals to review documents related to the patients assigned to him. The electronic documents contained the patients' demographic information, purported chief complaint, insurance number, and the suggested Health Care Services to be ordered. After receiving the electronic documents, the Defendant did not attempt to evaluate

3

and determine the patients' actual medical needs before ordering the Health Care Services. Furthermore, the Defendant did not have a prior doctor-patient relationship with his telemedicine patients, nor did the Defendant provide any follow-up care to the telemedicine patients after he ordered Health Care Services for them.

The Defendant further admits that, during the timeframe outlined in the Indictment, the Defendant conspired with individuals affiliated with the above-named companies and other individuals, in violation of Title 18 United States Code, Section 371:

(i) to defraud a health care benefit program and to obtain, by false and fraudulent representations, money owned by and under the control of a health care benefit program, in connection with the delivery and payment of health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347(a)(1) and (2); and

(ii) to knowingly and willfully solicit, offer, pay, and receive kickbacks, bribes, and rebates for referrals for services to be reimbursed in whole or part by a federal health care benefit program, in violation of Title 42, United States Code, Section 1320a-7b(b).

The Defendant admits that the Medicare and Medicaid Programs are public health care benefits plans, which affect commerce, and which will only reimburse enrolled providers for services that have been determined to be medically necessary by a doctor or other qualified provider.

It was further part of the conspiracy that, during the timeframe outlined in the Indictment, the Defendant signed fraudulent orders for Health Care Services, which allowed the companies receiving his fraudulent orders to submit reimbursement claims to Medicare. Relying on the Defendant's fraudulent orders, which the Defendant knowingly and intentionally signed, Medicare paid out at least 1.5 million dollars. In each of those fraudulent orders, Defendant made the material misrepresentation that the Health Care Services were medically necessary when—in truth and

4

fact—the Health Care Services were not medically necessary. When the Defendant submitted the fraudulent orders, he knew that the Health Care Services that he ordered were not medically necessary. Furthermore, the Defendant knew that companies were submitting claims to Medicare for the Health Care Services that were the subject of his fraudulent orders.

The Defendant further admits that he knew that it was illegal to solicit or receive remuneration of any kind in return for ordering, arranging for, or recommending goods or services for which payment may be made, in whole or in part, by a federal health care program. The Defendant further admits he knew that Medicare and Medicaid would not pay providers for items or services obtained as a result of illegal kickbacks.

The Defendant admits that, during the timeframe outlined in the Indictment, he received illegal kickbacks for signing, authorizing, and ordering Health Care Services, when he knew the patients did not need the items and services. The Defendant admits that the companies, from whom he received illegal kickbacks, typically paid him approximately $30 for each fraudulent order. The payments to the Defendant by each company are reflected in the chart below:

| Company | Amount Paid |
| --- | --- |
| Locum Tenens USA | $481,791 |
| FireFly XD | $79,306 |
| BodMD | $47,011 |
| Lifeline Recruit | $25,114 |
| AtMed | $22,780 |
| Lotus Health | $18,060 |
| Total | $674,062 |

5

The Defendant further admits that, on November 11, 2018, MC Medical Supply submitted a reimbursement claim to Medicare (a health care benefit program) for braces fraudulently ordered by the Defendant for patient A.B. In the fraudulent prescription that was signed by the Defendant, the Defendant falsely asserted that the braces were medically necessary for A.B. when they were not, in fact, medically necessary. Patient A.B. received those braces within the Eastern District of Missouri. The Defendant's fraudulent order of those braces for Patient A.B. was done in furtherance of the conspiracy and as a knowing and intentional execution of his scheme to defraud Medicare. In executing the health care scheme to defraud, the Defendant had the intent to defraud, and the execution of his scheme was in connection with the payment for health care services.

The Defendant further admits that, on November 28, 2018, Integrity Medical Supply submitted a reimbursement claim to Medicare (a health care benefit program) for braces fraudulently ordered by the Defendant for patient L.T. In the fraudulent prescription that was signed by the Defendant, the Defendant falsely asserted that the braces were medically necessary for L.T. when they were not, in fact, medically necessary. Patient L.T. received those braces within the Eastern District of Missouri. The Defendant's fraudulent order of those orthotics for Patient L.T. was done in furtherance of the conspiracy.

The Defendant further admits that he ignored numerous red flags and deliberately chose not to inquire. He, as an experienced physician, ignored the improper, unethical, and illegal nature of facts and circumstances presented to him.

As laid out below, the parties do not agree on the total loss in this case. At sentencing, the United States will recommend that the Court find that the loss amount was more than $7 million but less than $9.5 million.

## 5. STATUTORY PENALTIES:

The Defendant fully understands that the maximum possible penalty provided by law for the crime of executing a health care fraud, as charged in Count 2, to which the Defendant is pleading guilty is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2023 MANUAL:

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

(1) **Base Offense Level:** The parties agree that the base offense level for Counts 2 is 6, as found in Section 2B1.1(a)(2).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: The parties dispute the application of specific offense characteristics under USSG Section 2B1.1. The parties agree to take the following positions on specific offense characteristics at the time of sentencing:

- **USSG Section 2B1.1(b)(1):**
  - The United States will advocate for an 18-level increase under Section 2B1.1(b)(1)(J). In doing so, the United States will recommend that the Court find that the loss amount was more than $7 million but less than $9.5 million.

7

- **USSG Section 2B1.1(b)(7):**
    - The United States will advocate for a 3-level increase under Section 2B1.1(b)(7). In doing so, the United States will recommend that the Court find that the loss amount to a government health care program was more than $7 million but less than $9.5 million.

b. **Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the Defendant's intention to plead guilty. The parties agree that the Defendant's eligibility for this deduction is based upon information presently known. If, subsequent to the taking of the guilty plea, the Government receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the Government may present said evidence to the Court, and argue that the Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply:

- The Government asserts that the offense level should be increased by an additional 2 levels, pursuant to Section 3B1.3 because the Defendant abused a position of private or public trust. The Defendant disagrees with this enhancement.
- The offense level should be decreased by 2 levels, pursuant to Section 4C1.1, so long as the defendant did not receive any criminal history points from Chapter Four, Part A. The

8

parties reserve the right to challenge the defendant's criminal history calculation under the Guidelines.

- The parties have no further agreement regarding any other adjustments.

**d. Estimated Total Offense Level:** The parties do not have any agreement on the estimated total offense level.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the findings of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

9

motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether the Defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and

11

costs of supervision. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b), including all relevant conduct loss. The Defendant agrees to provide full restitution to all victims of all charges in the Indictment.

g. **Forfeiture:** The Defendant agrees to the entry of a forfeiture money judgment in the amount of restitution determined by the court at sentencing.

The Defendant agrees that the Court may enter a consent preliminary order of forfeiture at the time of his guilty plea or at any time before sentencing. The Defendant further agrees that this order will become final as to the Defendant when it is issued and will be part of his sentence pursuant to Fed. R. Crim. P. 32.2(b)(4)(A).

The Defendant agrees (i) to assist the Government in identifying all property that is subject to forfeiture, (ii) to take any and all actions necessary to transfer title and ownership of said property to the Government, and (iii) to help the Government to rebut the claims of nominees and/or alleged third party owners, including by testifying truthfully in any judicial forfeiture proceeding.

The Defendant knowingly and intelligently waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant further knowingly and intelligently waives any rights the Defendant may have (i) for notice of the forfeiture to be given in the charging instrument, (ii) for a jury or the Court to

determine what property is subject to forfeiture, (iii) for the Court to explain the forfeiture at the Defendant's change of plea hearing, and (iv) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment.

**h. Admissions:** Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

13

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the Defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly,

14

threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the Defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

4-4-2025
Date

DEREK J. WISEMAN
Assistant United States Attorney

15

4/3/25
Date

_____
SCOTT ROETHLE, M.D.
Defendant

16