AO 243 (Rev. 09/17)

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District EASTERN DISTRICT OF MISSOURI |
|---|---|

| Name *(under which you were convicted):* Scott Taggart Roethle | Docket or Case No.: 4:21-cr-00465-CDP-1 |
|---|---|

| Place of Confinement: Leavenworth Satellite Camp, on May 27, 2026 | Prisoner No.: 62341-509 |
|---|---|

| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* |
|---|---|
| UNITED STATES OF AMERICA | V. Scott Taggart Roethle |

### MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF MISSOURI
    EASTERN DIVISION

    (b) Criminal docket or case number (if you know): 4:21-cr-00465-CDP-1

2.  (a) Date of the judgment of conviction (if you know): plea, April 4, 2025
    (b) Date of sentencing: March 6, 2026

3.  Length of sentence: 36 months imprisonment and $8,390,973.22 restitution

4.  Nature of crime (all counts):

    Health Care Fraud 18 U.S.C. § 1347, count 2r of the Indictment on April 4, 2025, all other counts dismissed on the motion of the United States

5.  (a) What was your plea?  (Check one)
    (1) Not guilty ☐     (2) Guilty ☑     (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☑     No ☐

AO 243 (Rev. 09/17)

8. Did you appeal from the judgment of conviction?       Yes ☐        No ☑

9. If you did appeal, answer the following:
   (a) Name of court: _____
   (b) Docket or case number (if you know): _____
   (c) Result: _____
   (d) Date of result (if you know): _____
   (e) Citation to the case (if you know): _____
   (f) Grounds raised:

   (g) Did you file a petition for certiorari in the United States Supreme Court?       Yes ☐        No ☑
       If "Yes," answer the following:
       (1) Docket or case number (if you know): _____
       (2) Result:

       (3) Date of result (if you know): _____
       (4) Citation to the case (if you know): _____
       (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes ☐    No ☑

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: _____
        (2) Docket or case number (if you know): _____
        (3) Date of filing (if you know): _____

AO 243 (Rev. 09/17)

    (4)   Nature of the proceeding: _____

    (5)   Grounds raised:

    (6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐      No ☐

    (7)   Result: _____

    (8)   Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

    (1)   Name of court: _____

    (2)   Docket of case number (if you know): _____

    (3)   Date of filing (if you know): _____

    (4)   Nature of the proceeding: _____

    (5)   Grounds raised:

    (6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐      No ☐

    (7)   Result: _____

    (8)   Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)   First petition:      Yes ☐      No ☐

    (2)   Second petition:    Yes ☐      No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

AO 243 (Rev. 09/17)

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:**

> Ineffective Assistance Counsel: Abandonment of preserved sentencing objections without investigation, evidence, or adversarial testing

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

> See ATTACHMENT TO ITEM 12 — STATEMENT OF GROUNDS -One through Eight. The full factual statement and supporting record citations are set forth in the accompanying Memorandum of Law.
>
> GROUND FIVE — Failure to litigate restitution and the post-hearing joint-and-several expansion.
> GROUND SIX — Failure to pursue or adequately advise on a § 5K1.1 cooperation departure.
> GROUND SEVEN — Systemic breakdown of the attorney-client relationship through repeated threatened withdrawal.
> GROUND EIGHT — Failure to investigate, demand, and use critical discovery; uncorrected count-attribution and Brady problems.

(b) **Direct Appeal of Ground One:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐     No ☐

    (2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐     No ☑

    (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐     No ☐

AO 243 (Rev. 09/17)

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:**

Ineffective Assistance of Counsel (IAC): Failure to investigate and challenge the government's loss methodology.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT TO ITEM 12 — STATEMENT OF GROUNDS —One through Eight. The full factual statement and supporting record citations are set forth in the accompanying Memorandum of Law.

GROUND FIVE — Failure to litigate restitution and the post-hearing joint-and-several expansion.
GROUND SIX — Failure to pursue or adequately advise on a § 5K1.1 cooperation departure.
GROUND SEVEN — Systemic breakdown of the attorney-client relationship through repeated threatened withdrawal.
GROUND EIGHT — Failure to investigate, demand, and use critical discovery; uncorrected count-attribution and Brady problems.

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☐

AO 243 (Rev. 09/17)

(2)  If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:**

IAC: Failure to require service-category segregation, paid-versus-billed discipline, and claim-attribution precision.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT TO ITEM 12 — STATEMENT OF GROUNDS -One through Eight. The full factual statement and supporting record citations are set forth in the accompanying Memorandum of Law.

GROUND FIVE — Failure to litigate restitution and the post-hearing joint-and-several expansion.
GROUND SIX — Failure to pursue or adequately advise on a § 5K1.1 cooperation departure.
GROUND SEVEN — Systemic breakdown of the attorney-client relationship through repeated threatened withdrawal.
GROUND EIGHT — Failure to investigate, demand, and use critical discovery; uncorrected count-attribution and Brady problems.

(b) **Direct Appeal of Ground Three:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐        No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐

AO 243 (Rev. 09/17)

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): 

Date of the court's decision: 

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

Ineffective Assistance of Counsel (IAC): Failure to challenge PSR comparator cases and equal-culpability assertions.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See ATTACHMENT TO ITEM 12 — STATEMENT OF GROUNDS —One through Eight. The full factual statement and supporting record citations are set forth in the accompanying Memorandum of Law.

GROUND FIVE — Failure to litigate restitution and the post-hearing joint-and-several expansion.
GROUND SIX — Failure to pursue or adequately advise on a § 5K1.1 cooperation departure.
GROUND SEVEN — Systemic breakdown of the attorney-client relationship through repeated threatened withdrawal.
GROUND EIGHT — Failure to investigate, demand, and use critical discovery; uncorrected count-attribution and Brady problems.

(b) **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐      No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐      No ☑

(2)  If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

All eight grounds set forth above are presented for the first time in this proceeding. None has been previously presented in any federal court. Each ground sounds in ineffective assistance of trial counsel and was therefore properly reserved for collateral review under 28 U.S.C. § 2255 rather than direct appeal. No direct appeal was pursued, as set forth in the standard answer applicable to all grounds above and in the accompanying Memorandum of Law.

AO 243 (Rev. 09/17)

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?        Yes ☐        No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:
Neil Bruntrager and Michael Hepperly

(b) At the arraignment and plea:
Arraignment: Neil Bruntrager and Michael Hepperly
Plea: Kevin Curran, public defender
(c) At the trial:
NA

(d) At sentencing:
Kevin Curran and Michelle Monahan, public defenders

(e) On appeal:
NA

(f) In any post-conviction proceeding:
Michelle Nasser, CJA, from Dowd Bennett

(g) On appeal from any ruling against you in a post-conviction proceeding:
NA

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?        Yes ☐        No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐        No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?        Yes ☐        No ☐

AO 243 (Rev. 09/17)

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This motion is timely under 28 U.S.C. § 2255(f)(1). Judgment was entered following sentencing on March 6, 2026. Because no direct appeal was filed, the judgment of conviction became final in April 2026. The one-year limitation period of § 2255(f)(1) therefore runs through April 2027. This motion is filed within that one-year period and is timely.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

   (1)   the date on which the judgment of conviction became final;

   (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

   (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:

(1) vacate the sentence, restitution, and the judgment entered thereon;
(2) conduct an evidentiary hearing; and (3) resentence Movant

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _April 29, 2026_ .
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(month, date, year)

Executed (signed) on ___4/29/26___ (date).

/s/ Scott Taggart Roethle
_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

## AO 243 — ATTACHMENT TO ITEM 12 — STATEMENT OF GROUNDS

**United States v. Scott Taggart Roethle, M.D.**

Criminal No. 4:21-cr-00465-CDP-1 (E.D. Missouri)

**Motion Under 28 U.S.C. § 2255**

---

**Preliminary statement.** Movant raises eight grounds for relief, each sounding in ineffective assistance of counsel under the Sixth Amendment. Because the printed AO-243 form provides limited space for only four grounds, the full statement of all eight grounds is set forth in this Attachment, as the form expressly contemplates ("Attach additional pages if you have more than four grounds"). The factual statements below are fact-only and brief, and do not contain legal argument. Additional facts and evidence and the legal arguments and authorities supporting each ground are expanded and set forth in the accompanying Memorandum of Law in Support, with cross-references provided after each ground.

**Standard answers applicable to all eight grounds.** To avoid repetition, the following answers apply uniformly to questions 12(b) and 12(c) for each of Grounds One through Eight:

- **12(b)(1) — Direct Appeal:** No. Movant did not pursue a direct appeal.
- **12(b)(2) — Reason not raised on direct appeal:** No direct appeal was pursued. Following sentencing and near-immediate withdrawal of counsel, the Court appointed Michelle Nasser of Dowd Bennett LLP under the Criminal Justice Act for the limited purpose of advising Movant on direct appeal and joint and several inclusion litigation; that appointment concluded when Movant declined to pursue a direct appeal. Each of the grounds raised in this motion sounds in ineffective assistance of trial counsel and is properly raised for the first time on collateral review under 28 U.S.C. § 2255, as set forth in the accompanying Memorandum of Law.
- **12(c)(1) — Prior post-conviction proceedings:** No. This is the first post-conviction motion, petition, or application Movant has filed concerning this judgment of conviction.
- **12(c)(2)–(7):** Not applicable.

---

**GROUND ONE — Abandonment of preserved sentencing objections without investigation, evidence, or adversarial testing.**

**(a) Supporting facts:** Movant's plea agreement of April 4, 2025 expressly preserved the loss-amount dispute for sentencing (Plea Agreement § 6(a)(2); Plea Hearing Tr. 27:11–24), placing the burden on the government to prove loss. On February 11, 2026, trial counsel filed a written PSR objection (Doc. #264) formally disputing the PSR's loss amount, asserting that the correctly attributable loss was "less than 3.5 million dollars," identifying the U.S.S.G. § 2B1.1(b)(7) federal-healthcare-program enhancement as requiring adjustment if loss was reduced, and stating

that additional related cases would be provided in a separate filing. On February 25, 2026 — fourteen days later, and nine days before the March 6, 2026 sentencing hearing — counsel filed a statement with the Clerk withdrawing those objections in their entirety, without prior discussion with Movant. The withdrawal is recorded on the face of the final Presentence Investigation Report (Doc. #282 at 27): "On February 11, 2026, counsel for the defendant filed an objection. On February 25, 2026, counsel for the defendant withdrew the objections and filed a statement with the Clerk of the Court .... The defendant has no objections to the contents of the presentence report." Movant first learned of the withdrawal from the PACER docket. The promised "separate filing" of additional related cases was never made. No evidentiary hearing intervened between February 11 and February 25, no new facts intervened, and no government concession intervened. The sentencing hearing had been continued four times — originally July 2025, then to October 2025, December 2025, February 27, 2026, and finally March 6, 2026 — each at counsel's request for additional preparation time, giving counsel approximately eight months of preparation continuances after Movant's June–July 2025 delivery of substantive PSR objection memoranda. At the March 6 hearing, counsel called no witness, introduced no exhibit, and presented no substantive argument on loss, order claim or IP attribution, out-of-state claims, or comparator cases. The Court adopted the PSR as findings of fact (Sent. Tr. 5:6–9), and sentencing proceeded from offense level 24 and an advisory range of 51–63 months. Had counsel litigated and prevailed on the U.S.S.G. § 3B1.3 abuse-of-trust objection alone, the resulting offense level would have been 22 with a Guidelines range of 41–51 months — a reduction of two levels and ten months from the bottom of the range applied at sentencing. Any successful loss-tier reduction would have lowered the benchmark from which the Court calculated its variance. *See* Memorandum of Law, Part IV, Ground One; Part III.E; Declaration of Scott Taggart Roethle ¶¶ 4, 6, 7, 9.

**GROUND TWO — Failure to investigate and challenge the government's loss methodology.**

**(a) Supporting facts:** Two government-authored documents in counsel's possession — the April 2021 AUSA proffer and the December 2022 reverse proffer — set forth different and unreconciled scheme-loss figures. The PSR figure is $8,380,973.22 (¶ 41); the December 2022 reverse proffer presented a scheme-loss figure of $8,895,415; the unexplained gap of approximately $514,442 was never reconciled or placed before the Court. The government's own UPIC audit (GOV_0001602) — a fraud-investigation database produced in discovery, covering the entire alleged scheme period plus two years prior — reported total Medicare paid on DME claims bearing Movant's NPI in the Midwestern jurisdiction as $4,654,541.70, less than 56% of the PSR figure and a $3.7 million gap counsel never demanded the government reconcile. The HealthSplash/DMERx production contained, in a single column for every attributed order, the originating IP address. Analysis of that column identifies 515 entries (20.6% of all attributed HealthSplash orders) submitted from Indian IP addresses, including 14.102.127.10 (Hansar Broadband, 401 orders), 114.69.245.58 (Reliance Jio, 41 orders), 182.74.173.78 (Bharti Airtel, 38 orders), 122.177.143.206 (ACT Fibernet, 18 orders), and 182.69.250.141 (Bharti Airtel, 14 orders). Movant has never been to India. And similar metadata was never provided from all other platform systems to allow similar investigation. The government's discovery production also contained a dataset documenting $251,281.07 in paid Medicare claims for beneficiaries in California and Arkansas — states where Movant was not licensed and did not practice in any

way — including $178,534.54 in Arkansas professional claims with individual encounter pairs of $7,748 to $10,504. Counsel filed a PSR objection raising the out-of-state issue but withdrew it on February 25, 2026, without introducing a single supporting record, despite having received this claim-level dataset in discovery (many other claim-level datasets still remain unseen). The total scheme loss was approximately $27.27 million; Movant's attributed compensation was approximately $674,000 (~2.5% of the total), and approximately $126,317 of that figure consists of legitimate non-scheme telemedicine income from BodMD ($47,011.45), Firefly XD ($79,306.00), and BetterNight, which counsel allowed to remain in the PSR. The PSR contains an internal arithmetic discrepancy: the loss figure in ¶ 41 is $8,380,973.22, while the restitution figure in ¶¶ 44 and 108 is $8,390,973.22 — a $10,000 difference counsel never raised. *See* Memorandum of Law, Part IV, Ground Two §§ A–D; Part III.B–C; Declaration ¶¶ 4, 9, 10.

**GROUND THREE — Failure to require service-category segregation, paid-versus-billed discipline, and claim-attribution precision.**

**(a) Supporting facts:** The December 2022 Reverse Proffer's step-by-step loss calculation began with a starting value of $27,268,806, described in the government's own document as the total Medicare paid on all claims bearing Movant's signature across all dates — a universe that, by the same document's terms, included CGX/PGX laboratory claims and topical pain cream claims that the parties had agreed were excluded from the case. The April 2021 Proffer reported total CGX/PGX Medicare paid of $18,228,297.20 across 2,853 patients — nearly seven times the combined DME paid figure across all three DME datasets. The December 2022 Proffer disclosed only "partial CGX" inclusion (July 2018–April 2019) without explaining how that partial inclusion survived into the PSR. The April 2021 Proffer's "No Prior Relationship" aggregate of $8,395,718, which expressly covered "all DME, all CGX, and all Rx" claims, matches the PSR figures of $8,380,973.22 / $8,390,973.22 to within $5,000–$15,000. That arithmetic proximity to an all-category aggregate, and the discrepancies between figures across the proffer documents, were never investigated or litigated by counsel. The UPIC audit shows total billed of $9,890,915.74 against total paid of $4,657,742.92; loss under U.S.S.G. § 2B1.1 is ordinarily the amount paid, not the amount billed. Counsel never required the government to specify which aggregates were paid-based and which were billed-based, never enforced the paid-versus-billed distinction at sentencing, and never required service-category segregation between DME, CGX/PGX, and topicals. Defense investigator Christopher Riley's "Project Tango" report computed an adjusted attributable loss of approximately $2,559,740 — roughly 30% of the PSR figure — by applying service-category segregation, paid-versus-billed discipline, and claim-attribution precision. Counsel had the report in hand before sentencing, did not introduce it as an exhibit, did not call Mr. Riley as a witness, and did not present any of its analyses to the Court. Of the 2,931 DMERx orders in the underlying record, 2,123 were traced to the Georgia location of co-conspirator Robin Darnell, 600 originated from IP addresses in India, and 545 of 548 DocuSign envelopes were originated by Steven Richardson — none attributable to Movant. Had counsel litigated loss using the Project Tango framework and other evidence, and reduced the attributable loss below $7,000,000, the U.S.S.G. § 2B1.1 loss-table reduction alone would have lowered the offense level to 21 (range 37–46 months). *See* Memorandum of Law, Part IV, Ground Three §§ A–C; Part III.C; Declaration ¶¶ 9, 10.

**GROUND FOUR — Failure to challenge PSR comparator cases and equal-culpability assertions.**

**(a) Supporting facts:** PSR ¶ 42 asserted that Movant and three DME-supplier defendants — Jackson Siples, Jamie McCoy, and Brandy McKay (PSR ¶¶ 15–17) — were "all equally culpable." Those three DME-supplier cases were the entirety of the PSR's "related cases" section. The Court's 18 U.S.C. § 3553(a)(6) disparity analysis at sentencing proceeded on that universe (Sent. Tr. 34:11–17, 35:15–20), with the Court emphasizing the need to avoid creating disparate sentences relative to the three unchallenged comparators on the PSR. Counsel placed no physician comparator before the Court, filed no sentencing memorandum analyzing any in-network telemedicine physician's disposition, and made no argument identifying any in-district physician comparator. Robin Darnell — the individual the government's own data identified as the source of 3,912 fraudulent orders bearing Movant's signature and NPI, who operated Physician Acquisition Solutions LLC, gained access to Movant's accounts, signed orders in his name from Georgia, and sold his signature to multiple parties — pleaded guilty to conspiracy with loss capped at "not more than $1,000,000," and received 18 months' imprisonment and $774,875 in restitution (later receiving compassionate release). Counsel did not present Darnell as a comparator. Amy Swegan, M.D. — a physician recruited through the same Encore/ LocumTenens USA telemedicine network, prosecuted in this same district court by the same United States Attorney's Office (AUSAs McMurtry and Wiseman handled both cases), in United States v. Swegan, No. 4:21-cr-00255-SEP-NCC (E.D. Mo.) — pleaded guilty to three felonies (one count of conspiracy under 18 U.S.C. § 371 and two counts of health care fraud under 18 U.S.C. § 1347), with alleged loss of $8,918,134, total offense level 26 (two levels above Movant's level 24), and restitution of $7,270,911, less than Movant's. Dr. Swegan received six months' imprisonment. Movant received six times that sentence on a single § 1347 count, with a materially lower offense level and equivalent loss exposure. Counsel made no reference to Dr. Swegan at any point in the sentencing process. Beyond Dr. Swegan, the Encore/LTUSA telemedicine network generated federal prosecutions of approximately twenty physicians across eleven judicial districts; counsel placed no Encore/LTUSA physician distribution before the Court. The Court's disparity analysis therefore proceeded on an unrebutted three-DME-supplier universe and did not consider the documentary evidence of Movant's position relative to the in-network physician distribution or his victimization in the credential-theft conduct. Despite the documented physician-network criminal involvement and sentencing, the owners of Encore/LTUSA were never indicted — a fact that bears directly on Ground Six's cooperation analysis. *See* Memorandum of Law, Part IV, Ground Four §§ A–C; Declaration ¶¶ 9, 13.

**GROUND FIVE — Failure to litigate restitution and the post-hearing joint-and-several expansion.**

**(a) Supporting facts:** Restitution of $8,390,973.22 was ordered under the MVRA, 18 U.S.C. § 3663A. The government bore the burden under § 3664(e). Counsel did not demand an evidentiary hearing on restitution, did not cross-examine on the underlying restitution computation, and did not raise the $10,000 internal PSR discrepancy between the loss figure ($8,380,973.22, ¶ 41) and the restitution figure ($8,390,973.22, ¶¶ 44, 108). Specific categories of claims that should have been excluded from restitution were documented in the government's own discovery and were never placed before the Court: (i) DocuSign-derived claims dated after

December 6, 2018 — Movant's last valid DocuSign envelope was December 4, 2018, and from December 5, 2018 forward all envelopes from Expansion Media were declined or voided, with only Steven Richardson having access to those voided envelopes; specific known paid claims in this category include Tina Hypes (1/9/2019, $681.74), Andrew Green (1/5/2019, $2,154.96), and Barbara Sader (1/8/2019), among others. (ii) Count 8 (Betty Dorman) — the Indictment charged a December 4, 2018 date of service; the underlying records show a legitimate envelope dated November 30, 2018 whose Envelope ID was reused to fabricate a separate order dated December 11, 2018, which was submitted and paid. (iii) Post-stop-date supplier claims — beginning February 15, 2019 Movant denied all Medicare orders on HealthSplash/DMERx; defense investigation documented over $50,000 in paid claims from suppliers submitting after that date, including Jaime Medical, Inc. (3/11/2019–3/26/2019, $19,301.59), Horizon Medical Supply LLC (1/30/2020–3/2/2020, $6,930.06), Trojan Med Supplies (2/18/2020–2/25/2020, $4,292.02), and Alpha Medical Supply LLC (2/3/2020–2/14/2020). (iv) Count 9 (Theresa Ellefson) — a HealthSplash order signed from India IP address 14.102.127.10 (Delhi) at 8:31 a.m. CDT on July 27, 2018, charged as a discrete count of § 1347 conduct against Movant. (v) Lotus Healthcare orders — the Lotus platform was designed to automatically approve orders if the doctor did not log in for three days, meaning Medicare claims through Lotus bearing Movant's NPI may reflect non-action rather than affirmative review; the Lotus indictment (S.D. Fla.) identified at least seven unnamed co-conspirators and four unnamed individuals and documented that Lotus sold orders for up to 50% of Medicare payment. Similar evidentiary discrepancies of other platforms, orders, and claims were never sought or litigated by Counsel. *See* Memorandum of Law, Part IV, Ground Five §§ A–D; Part III.C; Declaration ¶¶ 9, 13.

**GROUND SIX — Failure to pursue or adequately advise on a § 5K1.1 cooperation departure.**

**(a) Supporting facts:** The April 2021 AUSA proffer and the December 2022 reverse proffer each expressly offered Movant the opportunity to seek a U.S.S.G. § 5K1.1 cooperation departure; the offers appear in writing on the face of the proffer materials and were communicated to defense counsel. The plea agreement also preserved the government's ability to file a § 5K1.1 motion for substantial assistance. Movant possessed concrete cooperation value: Rob Berton and Beau Berton, principals of Encore/LocumTenens USA, were identified in both proffers as the scheme's principal architects and still were never indicted; DJ Wells, Movant's direct Encore contact and recruiter, was never indicted; Steven Richardson's broader scheme extended substantially beyond this case (Richardson was separately convicted of a $110 million Medicare fraud scheme and sentenced to 10 years' imprisonment); and Robin Darnell's broader operations involved multiple physicians whose credentials she misappropriated. Movant asked counsel about pursuing cooperation. Counsel never pursued a cooperation agreement, never filed any motion or response addressed to cooperation, never arranged a substantive cooperation meeting, and did not adequately advise Movant of the substantive consequences of declining or pursuing § 5K1.1 cooperation. As a result, the Court was deprived of any opportunity to consider a cooperation departure that the government had at least twice indicated it was willing to entertain. *See* Memorandum of Law, Part IV, Ground Six; Part III.B; Declaration ¶¶ 9, 11.

**GROUND SEVEN — Systemic breakdown of the attorney-client relationship through repeated threatened withdrawal.**

**(a) Supporting facts:** The representation history of this case is documented on the docket. Movant was represented by paid private counsel from 2019 through December 2023 — approximately four years through the investigation and indictment stages. When Movant declined a proposed plea agreement in December 2023, that representation concluded. From December 2023 through April 4, 2025 — approximately fifteen months while the case was active — Movant proceeded pro se. Assistant Federal Public Defender Bevy Beimdiek served as nominal stand-by counsel for all of calendar year 2024 with no documented substantive engagement. Mr. Curran replaced Ms. Beimdiek as stand-by counsel in early 2025 and remained stand-by counsel only until Movant signed the plea on April 4, 2025; Mr. Curran's effective lead-counsel engagement therefore spanned only the eleven months between plea and sentencing. The April 4, 2025 plea was materially similar to the plea Movant had declined to sign in December 2023 with prior paid counsel — the government dropped Count 1 (conspiracy) but retained the conspiracy language in the factual-basis paragraph; Mr. Curran's role was to assist execution, not to negotiate. Mr. Curran retired from the Federal Public Defender's Office at the end of December 2025, retaining the case for the limited purpose of completing sentencing after another extension for his preparation. Michelle Monahan entered as additional counsel in early January 2026; Movant learned of her appearance from PACER and never received a substantive introduction. When Movant pressed counsel during the pre-sentencing period to litigate the preserved PSR objections, present the Project Tango analysis, challenge the loss aggregate, or pursue other avenues of mitigation, counsel responded on more than one occasion by threatening to withdraw from the representation immediately before sentencing — a position the cost of which Movant, only days or weeks from federal sentencing in a complex case, could not realistically absorb. In the hours before the March 6, 2026 hearing, counsel instructed Movant that he should not advance any objections or loss-attribution arguments at the hearing, that doing so would "make things worse," that doing so could "throw out the plea" and result in a trial with the same counsel, and that his allocution should be limited to acceptance of responsibility. Movant followed those instructions despite disagreement. Post-hearing Mr. Curran remarked to Movant only that the sentence "could have been worse." Then, after sentencing, when Movant raised the post-hearing addition of joint-and-several obligors and the appeal-notification deadline, Mr. Curran told Movant to "let the government handle it" and then wrote to Movant to "hire a lawyer." Within days both Mr. Curran and Ms. Monahan moved to withdraw from representation — without addressing the appeal-notification question on the record. *See* Memorandum of Law, Part IV, Ground Seven §§ A–C; Part III.E; Declaration ¶¶ 3, 5, 7, 8, 12.

**GROUND EIGHT — Failure to investigate, demand, and use critical discovery; uncorrected count-attribution and Brady problems.**

**(a) Supporting facts:** The government's loss and restitution figures rested on documentary materials counsel never investigated, never demanded, never compelled, and never placed before the Court — and on count-level attributions the government's own production contradicted. First, of the twenty-five counts in the Indictment, nine had no corresponding records produced at all: Count 5 (Arthur P. Clay), Count 7 (Robert Cardwell), Counts 12 and 13 (Vanessa Keys), Counts 15 and 16 (Laura Mosley), Count 17 (Celestine Purham), Count 23 (Lynn Hufft), and Count 25 (Josephine Morgan), plus Indictment ¶ 33 (Pauline Robinson) and Overt Acts 49c (Jean Simmons), 49d (Valerie Tennon), 49e (Jackie Jones), and 49f (Willie Richardson).

Although the government moved to dismiss Counts 1 and 3–25 in connection with the plea, the underlying conduct remained inside the PSR's loss and restitution aggregates. Second, the government's own production identifies a different physician — Karen L. Butler, M.D. (S.D. Ga., USAO 0094603, 0094607, 0094610–11) — as the actual prescriber on Overt Act 49f (Willie Richardson orthotics), with the same order cross-attributed to Movant on an Express Scripts spreadsheet (GOV 0186152–53). Dr. Butler, a documented Encore/LTUSA-network participant, was separately federally charged in United States v. Butler, No. 19-cr-00166-CLR (S.D. Ga.), pleaded guilty, and received one year of probation and $459,362 restitution. The same orders, and likely many others, are double-counted. Third, on seven additional counts where records were produced, dates of service in the Indictment do not match dates in the underlying patient records: Count 3 (Cooks, charged 11/27/2018; record 11/24/2018), Count 9 (Ellefson, charged 8/2/2018; record 7/27/2018, signed from Delhi, India IP 14.102.127.10), Count 10 (Foster, charged 11/28/2018; record 11/24/2018), Count 11 (Kallenbach, charged 11/27/2018; record 11/21/2018), Count 14 (Madden, charged 11/5/2018; record 11/1/2018), Count 18 (Purham, charged 11/5/2018; record 11/1/2018), and Count 21 (Wilson, charged 8/31/2018; record 8/24/2018). Counts 3 and 10 share an identical signing IP (76.92.197.167) and identical timestamp (07:09:07 on 11/24/2018), demonstrating a single batch-signing event charged as two discrete crimes. Counts 3 and 4 (Cooks) document a single bilateral-knee-brace order replicated three times with split billing to three different DME suppliers. Count 8 (Dorman) involves DocuSign Envelope-ID reuse to fabricate a 12/11/2018 order from a legitimate 11/30/2018 envelope. Count 11 (Kallenbach) involves the same envelope sold to two different suppliers (Integrity Medical Supply in Missouri and Paradise Medical in Florida). Count 24 (Hammond) is an undated email through People's Choice to Phoenix DME with no platform and no audit trail. Fourth, of approximately fourteen telemedicine platforms identified in discovery, only one (HealthSplash/DMERx) was produced with usable claims-level metadata; thirteen platforms remain unproduced — Blue Mosaic (LTUSA CRM, Bill Balsamo/MD Plus), Biologistic Software Solutions, Mazal, MedSymphony, Lotus Healthcare, Dial4MD, CuroMD, CareXD/Firefly XD, 7th Wellness, Consults Direct, IntelliwebMD, Telescrips, and Premier Labs — including Blue Mosaic, the platform from which Movant could not find and retrieve his own purported patient records in March 2019. Fifth, defense investigation identified an FBI Form 302 dated April 21 documenting a Highmark Healthcare internal investigation into the alteration and falsification of doctors' orders — directly material to the central defense theory — that was never produced; counsel never moved under Brady or Giglio to compel it, and never sought analogous 302s identified in other districts investigating telemedicine order falsification. Sixth, defense investigation identified a potential conflict of interest in the July 8, 2021 federal subpoena response by Brian McEvoy of Polsinelli on behalf of Encore Telemedicine / LocumTenens USA: McEvoy simultaneously represented James Simmons, owner of MedSymphony and Meetmydoc, LLC (Encore clients), who was indicted in the Southern District of Florida for $56 million Medicare fraud and sentenced to 35 months and $2,502,953 restitution. Counsel never investigated, never requested or obtained the subpoena, never compared its scope to the production, and never sought a supplemental production. Counsel never moved to compel any of the missing materials, never raised the Karen Butler double-attribution, never raised the date-of-service mismatches, and never argued that the loss aggregate rested on multiple attribution defects visible in the government's own production. See Memorandum of Law, Part IV, Ground Eight §§ A–D; Part VI.B; Declaration ¶¶ 9, 10.

**ITEM 13 — Grounds Not Previously Presented**

All eight grounds set forth above are presented for the first time in this proceeding. None has been previously presented in any federal court. Each ground sounds in ineffective assistance of trial counsel and was therefore properly reserved for collateral review under 28 U.S.C. § 2255 rather than direct appeal. No direct appeal was pursued, as set forth in the standard answer applicable to all grounds above and in the accompanying Memorandum of Law.

**ITEM 18 — Timeliness of Motion**

This motion is timely under 28 U.S.C. § 2255(f)(1). Judgment was entered following sentencing on March 6, 2026. Because no direct appeal was filed, the judgment of conviction became final in April 2026. The one-year limitation period of § 2255(f)(1) therefore runs through April 2027. This motion is filed within that one-year period and is timely.

Executed this 29th day of April, 2026, at Overland Park, KS

Scott Taggart Roethle

Movant, pro se

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth above, the foregoing Motion was filed with the Clerk of the Court via **email on** 4/29/26, and that a copy will be served on the United States Attorney's Office, Eastern District of Missouri (AUSA Derek J. Wiseman), via the Court's electronic filing system or by U.S. Mail at 111 South Tenth Street, 20th Floor, St. Louis, MO 63102.

Scott Taggart Roethle